UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SHARRON CHRISTIAN,

        Plaintiff,

v.

ENHANCED RECOVERY
COMPANY, LLC,

        Defendant.

_____/

## Complaint

### I.    Introduction

1.    This is an action for damages, brought by a consumer against a debt collector for violating the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, and Michigan Occupational Code ("MOC"), M.C.L. § 339.901 *et seq.*

### II.    Jurisdiction

2.    This Court has jurisdiction under 15 U.S.C. § 1692k(d) (FDCPA), and 28 U.S.C. § 1331. This Court has supplemental jurisdiction regarding plaintiff's state law claims under 28 U.S.C. § 1367. Venue in this judicial district is proper because the pertinent events took place here.

### III.    Parties

3.    Plaintiff Sharron Christian is an unmarried, adult, natural person residing in Kent County, Michigan. Miss Christian is a "consumer" and "person" as the terms are defined and/or used in the FDCPA. Miss Christian is a "consumer," "debtor" and "person" as the terms are

defined and/or used in the MOC.

4.     Defendant Enhanced Recovery Company, LLC ("ERC") is a Delaware limited liability company, with offices at 8014 Bayberry Road, Jacksonville, Florida 32256. The registered agent for ERC in Michigan is Capitol Corporate Services, Inc., 712 Abbott Road, East Lansing, Michigan 48823. ERC uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts. ERC regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. ERC is a "debt collector" as the term is defined and/or used in the FDCPA. ERC is qualified to do business in Michigan for the stated purpose of "Third party debt collections via interstate commerce." ERC is licensed (No. 2401002443) by the State of Michigan to collect delinquent consumer debts in Michigan. ERC is a "collection agency" and "licensee" as the terms are defined and/or used in the MOC.

## IV.     Facts

5.     Miss Christian had a credit account which she used to purchase goods and/or services for personal, family and household purposes. Any resulting obligation of Miss Christian to pay money to her creditor was a "debt" as the term is defined and used in the FDCPA and MOC.

6.     Miss Christian's creditor claimed that Miss Christian defaulted on her obligation to pay the alleged debt.

7.     Miss Christian disputes the alleged debt.

8.     Miss Christian refuses to pay the alleged debt.

9.     Miss Christian's creditor placed the account and related, alleged debt with ERC

for collection.

10.     In or before October of 2012, ERC used an automated dialing system to place one or more telephone calls to a telephone number that rings through to a telephone land line that is located at the residence of Miss Christian's mother. ERC used a pre-recorded and/or computer generated voice to leave the following message on a telephone answering machine that belongs to Miss Christian's mother and that is attached to the land line: "Hello. This message is for Sharron Christian. If you are not this person please delete this message as it is not for you. This is Enhanced Recovery Company. We are a collection agency attempting to collect a debt and any information obtained will be used for that purpose. Please contact me about this business matter at 800-459-3186 or visit www.payerc.com and provide the following reference number: 65025210."

11.     ERC placed the above-described telephone call and left the above-quoted message on the telephone answering machine that belonged to Miss Christian's mother for the purpose of attempting to collect an alleged debt from Miss Christian.

12.     The only reason ERC placed the above-described telephone call and left the above-quoted message on the telephone answering machine that belonged to Miss Christian's mother was in connection with efforts by ERC to collect an alleged debt from Miss Christian.

13.     Miss Christian did not reside with her mother when ERC left the above-quoted message on the telephone answering machine that belonged to Miss Christian's mother.

14.     Miss Christian's mother heard the above-quoted message left by ERC on the telephone answering machine that belonged to Miss Christian's mother.

15.     Miss Christian's mother communicated to Miss Christian the above-quoted

3

message that was left by ERC on the answering machine that belonged to Miss Christian's mother.

16.      ERC communicated information regarding the alleged debt directly and indirectly to Miss Christian.

17.      ERC communicated information regarding the alleged debt directly and indirectly to Miss Christian's mother.

18.      ERC did not obtain the prior consent of Miss Christian to communicate with Miss Christian's mother in connection with the collection of the alleged debt.

19.      ERC did not obtain the prior consent of Miss Christian to communicate to Miss Christian's mother that ERC was attempting to collect a debt from Miss Christian.

20.      Miss Christian has never given ERC permission to speak with Miss Christian's mother regarding the alleged debt.

21.      A debt collector may not communicate, in connection with the collection of a debt, with any person other than the consumer, except to acquire "location information" about the consumer.  15 U.S.C. § 1692b; 15 U.S.C. § 1692c(b).

22.      The FDCPA defines "location information" to mean "a consumer's place of abode and his telephone number at such place, or his place of employment."  15 U.S.C. § 1692a(7).

23.      A debt collector when communicating with any person other than the consumer for the purpose of acquiring location information about the consumer shall not state that such consumer owes any debt.  15 U.S.C. § 1692b(2).

24.      The FDCPA states that a debt collector when communicating with any person other than the consumer for the purpose of acquiring location information about the consumer

4

shall, "only if expressly requested, identify his employer." 15 U.S.C. § 1692b(1).

25.     ERC disclosed to Miss Christian's mother the name of its company in the above-quoted message that was left by ERC on the answering machine that belonged to Miss Christian's mother, without an express request for such information by Miss Christian's mother, and thereby violated the FDCPA.

26.     ERC used an automated dialing system to place the above-described telephone call, and used a pre-recorded and/or computer generated voice to leave the above-quoted message on the answering machine that belonged to Miss Christian's mother, without regard to whether the message might by heard by someone other than Miss Christian.

27.     ERC could have used other methods to communicate with Miss Christian.

28.     ERC could have chosen to communicate with Miss Christian by postal mail.

29.     ERC could have chosen to communicate with Miss Christian by speaking directly with Miss Christian by telephone.

30.     ERC could have chosen not to use an automated dialing system to place a telephone call to a telephone number and use a pre-recorded and/or computer generated voice to disclose that ERC was attempting to collect a debt from Miss Christian.

31.     ERC could have chosen to have a live person make the telephone call to Miss Christian and then have the live person use discretion regarding whether to leave a recorded message for Miss Christian on a telephone answering machine.

32.     ERC, to reduce its business expenses and increase its profits, chose to use an auto-dialer to indiscriminately place telephone calls and leave pre-recorded and/or computer generated messages on telephone answering machines, without regard for the privacy of consumers such as

Miss Christian and without regard for the requirements of the FDCPA.

33.    ERC violated 15 U.S.C. § 1692c(b) by leaving a recorded message on a telephone answering machine, which resulted in a communication to Miss Christian's mother that ERC was attempting to collect an alleged debt from Miss Christian. *Berg v. Merchants Association Collection Division, Inc.*, 586 F.Supp. 1336 (S.D. Fla. 2008).

34.    ERC is a member of ACA International ("ACA").

35.    ACA is a trade group for debt collectors. ACA has sent multiple writings to its members, including ERC, warning about the risks associated with violating the FDCPA by leaving a message on an answering machine or voice mail that could result in an unlawful disclosure to a third party that a consumer allegedly owes a debt.

36.    ERC knowingly assumed the risk of violating the FDCPA by leaving a message on a telephone answering machine that ERC was calling to collect a debt, knowing that the message might be heard by someone other than Miss Christian.

37.    ERC in the pre-recorded and/or computer generated message left for Miss Christian on the telephone answering machine that belonged to Miss Christian's mother, warned others not to listen to the message, establishing that ERC recognized the likelihood that someone other than Miss Christian might hear the message.

38.    ERC knowingly assumed the risk of violating the FDCPA by leaving a message on an answering machine, stating that ERC was calling to collect a debt from Miss Christian, with knowledge of the risk that the message might be heard by someone other than Miss Christian.

39.    It was not reasonable for ERC to assume that someone such as Miss Christian's

mother would obey ERC's command to "delete" a message left for her daughter without listening to the full message.

40.     The message left by ERC on the telephone answering machine that belonged to Miss Christian's mother warned the listener to "delete" the message if the listener was not Miss Christian. However, the message did not instruct the listener to delete the message before listening to the entire message. Moreover, the only way for the listener to obtain sufficient information for the purpose of making ERC stop calling was to listen to the entire message.

41.     When ERC placed the above-described telephone call and left the above-quoted message on the telephone answering machine that belonged to Miss Christian's mother for the purpose of attempting to collect an alleged debt from Miss Christian, ERC had actual knowledge that the telephone number rang through to a telephone located at the residence of Miss Christian's mother and that the telephone answering machine was used by Miss Christian's mother.

42.     ERC intentionally called the telephone number described above.

43.     ERC did not maintain procedures reasonably adapted to avoid the above-described violations of the FDCPA.

44.     Even if ERC did maintain procedures reasonably adapted to avoid the above-described violations of the FDCPA, ERC failed to follow those procedures.

45.     ERC failed to maintain procedures reasonably adapted to avoid disclosing to a third party that a consumer owed a debt. Instead, ERC left a recorded message for a consumer on an answering machine, knowing it was possible that the message might be heard by someone other than the consumer.

46.     ERC failed to maintain procedures reasonably adapted to avoid disclosing to Miss Christian's mother that Miss Christian owed an alleged debt.  Instead, ERC left a recorded message for Miss Christian on a telephone answering machine that belonged to Miss Christian's mother, knowing that it was possible that the message might be heard by someone other than Miss Christian.

47.     ERC scripted and intended to speak the pre-recorded and/or computer generated words that were spoke by ERC when leaving the above-quoted message on the telephone answering machine that belonged to Miss Christian's mother.

48.     ERC has been sued multiple times for allegedly violating the FDCPA by using an automated dialing system to place a telephone call and using a pre-recorded and/or computer generated voice to deliver a message for a consumer in efforts to collect a debt which resulted in an unlawful disclosure to a third party that ERC was attempting to collect a debt from the consumer.  Despite those lawsuits, ERC has made the business decision to continue to engage in debt collection practices that ERC knows will from time to time violate the law.

49.     The acts and omissions of ERC and its employees done in connection with efforts to collect a debt from Miss Christian were done intentionally and wilfully.

50.     ERC and its employees intentionally and wilfully violated the FDCPA and MOC.

51.     As an actual and proximate result of the acts and omissions of defendant and its employees, plaintiff has suffered actual damages and injury, including but not limited to, monetary loss, fear, stress, mental anguish, emotional stress, acute embarrassment, humiliation and suffering for which she should be compensated in an amount to be established by jury and at trial.

## V.   Claims for Relief

### Count 1– Fair Debt Collection Practices Act

52.   Plaintiff incorporates the foregoing paragraphs by reference.

53.   Defendant has violated the FDCPA. Defendant's violations of the FDCPA include, but are not necessarily limited to, the following:

a)   Defendant violated 15 U.S.C. § 1692b;

b)   Defendant violated 15 U.S.C. § 1692c;

c)   Defendant violated 15 U.S.C. § 1692d by engaging in conduct, the natural consequence of which is to harass, oppress, or abuse a person in connection with the collection of a debt; and

d)   Defendant violated 15 U.S.C. § 1692f by using unfair and unconscionable means to collect or attempt to collect a debt from plaintiff.

**Wherefore,** plaintiff seeks judgment against defendant for:

a)   Actual damages pursuant to 15 U.S.C. § 1692k(a)(1);

b)   Statutory damages pursuant to 15 U.S.C. § 1692k(a)(2)(A);

c)   Costs and reasonable attorney's fees pursuant to 15 U.S.C. § 1692k(a)(3); and

d)   Such further relief as the court deems just and proper.

### Count 2 – Michigan Occupational Code

54.   Plaintiff incorporates the foregoing paragraphs by reference.

55.   Defendant has violated the MOC. Defendant's violations of the MOC include, but are not necessarily limited to, the following:

a)   Defendant violated M.C.L. § 339.915(m) by bringing to public notice that the

consumer is a debtor;

b)     Defendant violated M.C.L. § 339.915(n) by using a harassing, oppressive, or

abusive method to collect a debt;

c)     Defendant violated M.C.L. § 339.915(q) by failing to implement a procedure

designed to prevent a violation by an employee; and

d)     Defendant violated M.C.L. § 339.919.

**Wherefore,** plaintiff seeks judgment against defendant for:

a)     Actual damages pursuant to M.C.L. § 339.916(2);

b)     Treble the actual damages pursuant to M.C.L. § 339.916(2);

c)     Statutory damages pursuant to M.C.L. § 339.916(2);

d)     Reasonable attorney's fees and court costs pursuant to M.C.L. § 339.916(2); and

e)     Equitable relief pursuant to M.C.L. § 339.916(1).

## Demand for Trial by Jury

Plaintiff demands trial by jury.

Dated: October 9, 2012

Phillip C. Rogers (P34356)
Attorney for Plaintiff
40 Pearl Street, N.W., Suite 336
Grand Rapids, Michigan 49503-3026
(616) 776-1176
ConsumerLawyer@aol.com